UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 17-3632-GW(MRWx) | Date | November 13, 2017 |
|---|---|---|---|
| Title | *Shemeka Rhodes, et al. v. Lee Turner, et al.* | | |

| Present: The Honorable | GEORGE H. WU, UNITED STATES DISTRICT JUDGE | |
|---|---|---|
| Javier Gonzalez | Katie Thibodeaux | |
| Deputy Clerk | Court Reporter / Recorder | Tape No. |

Attorneys Present for Plaintiffs:

Nadav Zohar
Neal S. Zaslavsky

Attorneys Present for Defendants:

Gregory E Woodard

**PROCEEDINGS:** **DEFENDANTS' MOTION TO DISMISS PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 12(b)(6) [23];**

**DEFENDANTS' MOTION TO STRIKE AND SPECIAL MOTION TO STRIKE COUNT NINE [25]**

Court hears oral argument. The Tentative circulated and attached hereto, is adopted as the Court's Final Ruling. The Court denies Defendants' anti-SLAPP motion [25]. It grants Defendants' motion to dismiss [23], with leave to amend.

The Court sets a scheduling conference for January 11, 2018 at 8:30 a.m. Parties will file a Joint Rule 26(f) Report by noon on January 8, 2018.

: 03

Initials of Preparer   JG

*Rhodes, et al. v. Turner, et al.*, Case No. 2:17-cv-03632-GW-(MRWx)
Tentative Rulings on: (1) Special Motion to Strike Count Nine and (2) Motion to Dismiss Pursuant to Federal Rules of Civil Procedure 12(b)(6)

In a First Amended Complaint ("FAC") filed September 8, 2017, Shemeka Rhodes; Lance Pascascio; Aunyae Lewis; Andre Lewis, by and through his Guardian ad litem, Shameka Rhodes; Nyree Lewis, by and through his Guardian ad litem, Shameka Rhodes; Alicia Lewis, by and through her Guardian ad litem, Shameka Rhodes; Ahijai Lewis, by and through her Guardian ad litem, Shameka Rhodes; Brijai Lewis, by and through her Guardian ad litem, Shameka Rhodes; Charon Christy, by and through his Guardian ad litem, Aunyae Lewis; and Miyae Christy, by and through her Guardian ad litem, Aunyae Lewis (collectively, "Plaintiffs") asserted fourteen causes of action against Lee Turner (individually and a co-trustee of the Turner Family Trust) and Anetta Turner (individually and a co-trustee of the Turner Family Trust) (collectively, "Defendants"). In general, the FAC alleges that Plaintiffs lived in property owned by Defendants that Plaintiffs describe (going into great detail in support) as "untenantable, uninhabitable, and toxic." FAC ¶ 50.

Defendants have filed two motions – an anti-SLAPP motion pursuant to California Code of Civil Procedure § 425.16 seeking to strike the ninth claim for relief (for violations of the Fair Housing Act), and a motion to dismiss, pursuant to Federal Rule of Civil Procedure 12(b)(6), seeking to dismiss the eighth (for violations of the Unruh Civil Rights Act), ninth and eleventh (for conversion) claims for relief.

**Anti-SLAPP Motion**

Defendants move to strike Plaintiffs' ninth claim for relief for violation of the Fair Housing Act (Title VIII of the Civil Rights Act of 1968) ("FHA"), arguing that the claim arises from the protected activity of Defendants having served Plaintiffs with a 60-day notice to quit and subsequently bringing eviction proceedings against Plaintiffs, and that Plaintiffs are unable to demonstrate a probability of prevailing on the merits of the claim because Plaintiffs cannot evidence the necessary discriminatory foundation for the claim.

The Court will deny this motion at the doorstep (though not for a reason either side has discussed). Although state anti-SLAPP statutes generally apply in federal court,

they do not apply to federal causes of action in federal court.[1] *See Doe v. Gangland Prods., Inc.*, 730 F.3d 946, 955 n.3 (9th Cir. 2013); *Hilton v. Hallmark Cards*, 599 F.3d 894, 901 (9th Cir. 2010) ("Because a federal court can only entertain anti-SLAPP special motions to strike in connection with state law claims, there is no properly appealable order with which the Lanham Act claim could be inextricably intertwined."); *Elem Indian Colony of Pomo Indians of the Sulphur Bank Rancheria v. Ceiba Legal, LLP*, 230 F.Supp.3d 1146, 1153 (N.D. Cal. 2017) ("[A special motion to strike under California's anti-SLAPP law], while permitted in our circuit, has limited reach because federal courts can only entertain anti-SLAPP special motions to strike in connection with state law claims."); *see also DC Comics v. Pac. Pictures Corp.*, 706 F.3d 1009, 1013 n.5 (9th Cir. 2013) ("We have held that [a special motion to strike] is available against state law claims brought in federal court."); O'Connell & Stevenson, California Practice Guide: Federal Civil Procedure Before Trial (2017) § 1:443, at 1-62.

Even if the Court were to overlook this fundamental defect in Defendants' anti-SLAPP motion, the Court would never get to the second step of the anti-SLAPP analysis here because the Court does not believe that the FHA claim "arises from" or is "based on" the allegedly-protected conduct in question – service of a 60-day notice to quit and eviction proceedings – or that such conduct is the "principal thrust or gravamen" of the FHA claim. *See* Cal. Code Civ. Proc. § 425.16(b)(1); *City of Cotati v. Cashman,* 29 Cal.4th 69, 78 (2002) ("In the anti-SLAPP context, the critical point is whether the plaintiff's cause of action itself was *based on* an act in furtherance of the defendant's right of petition or free speech."); *Martinez v. Metabolife Int'l, Inc.,* 113 Cal.App.4th 181, 188 (2003).[2] The claim is plainly "based on" the history of allegedly untenantable

---

[1] In state court, the answer appears to be different. *See* Weil & Brown, California Practice Guide: Civil Procedure Before Trial (2017) 7:759, at 7(II)-35 (citing *Tichinin v. City of Morgan Hill*, 177 Cal.App.4th 1049, 1061 (2009)).

[2] Defendants believe that this requirement is satisfied because they do not think Plaintiffs would have brought the FHA claim without the 60-day notice and eviction occurring. *See, e.g.*, Docket No. 25-1, at 7:3-5 ("Plaintiffs' Ninth Count for violation of the Fair Housing Act claims it is based on Plaintiffs' race and gender, but in reality it was filed because Mr. Turner evicted Ms. Rhodes for failure to pay rent."); *id.* at 8:27-28 ("Ms. Rhodes' actions prove that the motivation for the FAC was her eviction."); Docket No. 46, at 1:13-14 ("Plaintiffs' own actions demonstrate that they filed their FHA claim as a result of the protected activity."); *id.* at 3:9-10 ("Here, the 60-day notice and eviction proceeding were the catalyst for Plaintiffs' FHA claim."). But, as set out above, that is not the test for whether a claim arises from protected activity. Indeed, as Defendants otherwise observe, the question is whether the protected activity is the "principal

conditions at the property in question (which Plaintiffs assert exist because of a discriminatory intent). *See, e.g.,* FAC ¶¶ 32, 34, 37-38, 42, 45, 47-54, 57(d), 57(e), 58-72, 76, 80-109, 191-92, 196-98. This is true even if the Court were to consider allegations that were present in the original Complaint and removed in drafting the FAC.[3] Thus, Defendants would have failed their burden at the first step of the anti-SLAPP analysis, *see Makaeff v. Trump Univ., LLC*, 715 F.3d 254, 261 (9th Cir. 2013), even if the statute were applicable to the FHA claim.

As such, the Court denies the anti-SLAPP motion.

**Motion to Dismiss**

Under Rule 12(b)(6), a court must: (1) construe the complaint in the light most favorable to the plaintiff, and (2) accept all well-pleaded factual allegations as true, as well as all reasonable inferences to be drawn from them. *See Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir.), *amended on denial of reh'g*, 275 F.3d 1187 (9th Cir. 2001); *Pareto v. F.D.I.C.*, 139 F.3d 696, 699 (9th Cir. 1998); *see also Dahlia v. Rodriguez*, 735 F.3d 1060, 1066 (9th Cir. 2013) (en banc). The court need not accept as true "legal conclusions merely because they are cast in the form of factual allegations." *Warren v. Fox Family Worldwide, Inc.*, 328 F.3d 1136, 1139 (9th Cir. 2003). In its consideration of the motion, the court is limited to the allegations on the face of the complaint (including documents attached thereto), matters which are properly judicially noticeable and "documents whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the pleading." *See Lee v. City of Los Angeles*, 250 F.3d 668, 688-89 (9th Cir. 2001); *Branch v. Tunnell*, 14 F.3d 449, 453-54 (9th Cir. 1994), *overruling on other grounds recognized in Galbraith v. County of Santa Clara*, 307 F.3d 1119 (9th Cir. 2002).

---

thrust or gravamen" of the cause of action and simply "because a cause of action may have been 'triggered' by protected activity does not by default mean that it arises from such." Docket No. 25-1, at 7:8-10, 7:16-18; *see also City of Cotati v. Cashman*, 29 Cal.4th 69, 78 (2002).

[3] Such consideration would conflict with the view – at least in federal court – that amendment of allegations is permitted in the face of an anti-SLAPP motion or even after a *successful* anti-SLAPP motion. *See Verizon Del. Inc. v. Covad Commc'ns Co.*, 377 F.3d 1081, 1091 (9th Cir. 2004); *see also Greensprings Baptist Christian Fellowship Trust v. Cilley*, 629 F.3d 1064, 1065, 1069 (9th Cir. 2010); *Maloney v. T3Media, Inc.*, 94 F.Supp.3d 1128, 1140 (C.D. Cal. 2015); *Brown v. Elec. Arts, Inc.*, 722 F.Supp.2d 1148, 1156-57 (C.D. Cal. 2010). What would the point be of allowing amendment if a plaintiff's original allegations could always be used against it (as "judicial admissions") for purposes of demonstrating the "principal thrust or gravamen" of a cause of action?

Dismissal pursuant to Rule 12(b)(6) is proper only where there is either a "lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990); *Johnson v. Riverside Healthcare Sys., LP*, 534 F.3d 1116, 1121-22 (9th Cir. 2008); *see also Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 561-63 (2007) (dismissal for failure to state a claim does not require the appearance, beyond a doubt, that the plaintiff can prove "no set of facts" in support of its claim that would entitle it to relief). However, a plaintiff must also "plead 'enough facts to state a claim to relief that is plausible on its face.'" *Johnson*, 534 F.3d at 1122 (quoting *Twombly*, 550 U.S. at 570). A complaint does not "suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 556). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

As with their anti-SLAPP motion (in connection with the second prong, which the Court did not reach in considering that motion), Defendants argue that the FAC's eighth and ninth claims for relief should be dismissed for failure to allege (or, in the context of the other motion, prove), other than conclusorily, any discrimination as a basis for those claims. Both claims require discrimination as an element (or at least Plaintiffs do not deny this point). *See Harris v. Itzhaki*, 183 F.3d 1043, 1051 (9th Cir. 1999); *Gilligan v. Jamco Dev. Corp.*, 108 F.3d 246, 250 (9th Cir. 1997) ("[W]e clarify that the vitality of a fair housing complaint should be judged by the statutory elements of an FHA claim rather than the structure of the prima facie case. The FHA provides a private right of action for an 'aggrieved person' subjected to 'an alleged discriminatory housing practice.'") (omitting internal citation) (quoting 42 U.S.C. § 3613(a)(1)(A)); *Ramirez v. Wong*, 188 Cal.App.4th 1480, 1485 (2010); *Cullen v. Netflix, Inc.*, 880 F.Supp.2d 1017, 1024 (N.D. Cal. 2012); *Drawsand v. F.F. Props., L.L.P.*, 866 F.Supp.2d 1110, 1119 (N.D. Cal. 2011).

On the topic of their allegations supporting an element of discrimination, Plaintiffs respond that they have pled their claims in "exacting detail." Docket No. 42, at 1:13. While the Court would not disagree that the FAC is lengthy, they should not

4

confuse verbosity with facts.

The Court has reviewed the FAC, in full. While it finds the allegations to be detailed in terms of supposition and belief, the Court discerns no factual allegations supporting a claim of discrimination. *See* FAC ¶¶ 32-34, 55, 69, 76-77, 79, 112, 173-74, 183, 187, 197-98.[4] Clothing those beliefs in hyperbole does not aid the effort. In fact, the Court has a difficult time disagreeing with Defendants' summarization of Plaintiffs' allegations in this regard as being "they say it happened, so it happened," Docket No. 45, at 2:3-4, with "it" being a discriminatory motive. Or, as one other court has put it, "[t]he bare possibility of discrimination premised on speculation, without any underlying factual basis, is insufficient to state a claim under the Unruh Act*." Dallas & Lashmi, Inc. v. 7-Eleven, Inc.*, 112 F.Supp.3d 1048, 1063 (C.D. Cal. 2015).

While Plaintiffs note that the Unruh Act is to be given a liberal construction, the Court does not find Plaintiffs' claims deficient because of a construction of the statute, but because Plaintiffs' allegations reveal nothing that would objectively indicate a race- or sex-based motivation for Defendants' conduct. Instead, every single allegation that attempts to tie such a purpose to Defendants' actions or inactions is based simply in Plaintiffs' belief about why Defendants acted as they did. There are no statements from Defendants that indicate such animus, no different treatment of other similarly-situated individuals of different races, just Plaintiffs' flat conclusions that Defendants' conduct resulted from discrimination.

This is insufficient to pass through the gate erected by *Twombly* and *Iqbal*. Defendants argue that Plaintiffs should be denied an opportunity to amend because Plaintiffs have already had the chance to amend the Complaint after Defendants "alerted them to the deficiencies in the original Complaint." Docket No. 23-1. Whatever Defendants "alerted" Plaintiffs to, there was no *court ruling* on the sufficiency of

---

[4] Plaintiffs do indeed allege facts, at least with respect to Defendants' alleged decision to send a "notorious gang-banger" named "Baldy" to visit and intimidate them. But the allegation that Defendants' did so (or allowed the property to remain in the condition alleged in the FAC) *because* Plaintiffs are African-American is, at this stage, not tied to any factual allegations. *See* FAC ¶ 79 ("The Defendants knew that members of the African-American community living in an area plagued by gang violence, like the Plaintiffs, would be particularly terrified by a visit from a notorious gang-banger like 'Baldy.' Plaintiffs are informed and believe that the Defendants would not have sent a notorious African-American gang-banger like 'Baldy' to the home of a white tenant, because law enforcement would have been more likely to respond to protect a white tenant from a black gang-banger than they would have been to respond to potential 'black-on-black' violence.").

Plaintiffs' allegations until today. As a result, the Court will not hold Plaintiffs' previous amendment against them in determining whether to grant further leave to amend.[5] Given the liberal policy reflected in the Federal Rules of Civil Procedure that favors amendment, the Court will grant Defendants' motion with respect to claims eight and nine, but will allow Plaintiffs one more opportunity to amend.[6]

With respect to the FAC's eleventh claim, for conversion, Defendants argue that the claim should be dismissed both because Plaintiffs have not identified a definite sum of money and because the economic loss rule bars the claim. In response to the first argument, Plaintiffs assert that, at least in federal court (because of liberal pleading requirements), there is no requirement *at the pleading stage* that a plaintiff with a conversion claim based on the taking of money identify a specific or exact sum. Instead, Plaintiffs believe, that type of detail need only be provided or proved at a later stage, and that the amount simply be "capable of identification" at the pleading stage. Plaintiffs therefore treat the issue as one of pleading specificity (which is not required for such a claim in federal court) rather than a substantive requirement for that particular type of conversion claim. Plaintiffs then alternatively argue that they actually have pled a specified, readily identifiable, sum "such as inter alia each monthly rental payment that the Defendants demanded and retained from Plaintiffs while the Property was not tenantable; three thousand dollars ($3,000) that Plaintiffs spent on rat poison because Defendants refused to take any step to cure the infestation of rats and vermin in the Property; and nine hundred dollars ($900) that Plaintiffs spent on Anti Roach sprays." Docket No. 42, at 13:14-19.

Plaintiffs are incorrect that federal courts do not enforce the "specific sum of money" requirement for a California-law conversion claim at the pleading stage. *See*

---

[5] This is true with respect to all three claims that are the subject of the motion to dismiss.

[6] Plaintiffs' FHA claim appears to be the only basis for federal question jurisdiction over this action. If, at some point, that claim disappears from this action, plaintiffs will need to cure defects in their citizenship allegations if they are to allege that the Court also maintains jurisdiction over this action by way of complete diversity. As it stands, Plaintiffs have not alleged the parties' *citizenships* (as to some, they have alleged only *residence*). *See* FAC ¶¶ 6-16, 18-19. Furthermore, the Court might have some reason to question whether Defendants are not, in fact, citizens of California. *See id.* ¶ 57(a). If federal question jurisdiction is no longer present, and Plaintiffs cannot substantiate the requirements for diversity jurisdiction, the *thirteen* state law claims in this action would only be before the Court by way of supplemental jurisdiction.

*Snyder & Assocs. Acquisitions LLC v. United States*, 859 F.3d 1152, 1160-61, *as amended*, 868 F.3d 1048 (9th Cir. 2017); *see also ESG Capital Partners, LP v. Stratos*, 828 F.3d 1023, 1038 (9th Cir. 2016); *Ortega v. Toyota Motor Sales, USA, Inc.*, 572 F.Supp.2d 1218, 1220 (S.D. Cal. 2008). With respect to the theory that this is a mere heightened-pleading requirement that is not applicable in federal court, this Court believes that view is in error – as supported by the foregoing citations, it is a *substantive* requirement for the particular claim of conversion. *See also* 5 Witkin, Summary of California Law: Torts (10th ed.) § 703, at 1026 ("Money cannot be the subject of conversion unless a *specific, identifiable sum* is involved."). California courts do not require specific sums of money to be pled in all types of actions where they are relevant, as would presumably be the case if the issue were the result of a mere difference in pleading standards in California and federal courts.

To the extent that Plaintiffs argue, in the alternative, that they *have* stated a specific sum, the Court again disagrees. First, the two specific amounts they have identified – money spent on rat poison and anti-roach sprays, *see* FAC ¶¶ 82, 91 – would not appear to be amounts that Plaintiffs paid *to Defendants*, or that Defendants *took from Plaintiffs*. It is therefore unclear how those amounts could support a conversion claim at all (as opposed to some form of damages claim). Second, "each monthly rental payment that the Defendants demanded and retained from Plaintiffs while the Property was not tenantable" is not a specific sum at all.

As a result, Plaintiffs' conversion claim is subject to dismissal. The only question is whether Plaintiffs should be allowed to amend (if they can, consistent with the foregoing) or whether the economic loss rule should also apply so as to preclude Plaintiffs from being able to state a conversion claim at all.

With respect to the economic loss rule-basis for the challenge to the conversion claim, Defendants argue that a tort cannot be used to recover for a breach of duties that merely restate contractual obligations. Plaintiffs respond that the liability is not "founded solely in the contract between them," but "stems from the various statutory violations alleged against the Defendants." Docket No. 42, at 13:28-14:2. But, still, any duties Defendants owed Plaintiffs still unquestionably originated due to the parties' contractual relationship by way of the lease.

7

In any event, if the Court is reading secondary materials correctly, Defendants are incorrect in this argument, because there is case law allowing claims for *both* conversion and breach of contract (although not in the context of a property lease arrangement such as is involved here). *See* 3 Witkin, California Procedure: Actions (5th ed.) § 157, at 238 (discussing *Edwards v. Jenkins*, 214 Cal. 713 (1932) and *Peterson v. Sherman*, 68 Cal.App.2d 706 (1945)). Indeed, in *Erlich v. Menezes*, 21 Cal.4th 543 (1999), the California Supreme Court indicated that "[g]enerally, outside the insurance context, 'a tortious breach of contract…may be found when (1) the breach is accompanied by a traditional common law tort, such as fraud or conversion…." *Id.* at 553 (quoting *Freeman & Mills, Inc. v. Belcher Oil Co.*, 11 Cal.4th 85, 105 (1995) (Mosk, J., concurring and dissenting)); *see also Robinson Helicopter Co., Inc. v. Dana Corp.*, 34 Cal.4th 979, 990 (2004). In contrast, the Court has not discovered any *reported* decision adopting Defendants' economic-loss-rule argument in connection with a conversion claim under California law (let alone one arising in the lessor/lessee quiet enjoyment/habitability scenario). In light of that lack of precedent on the question, the Court will not adopt Defendants' argument on this point, at least not at this time.

Nevertheless, due to the "specific sum" issue discussed above, the Court will grant Defendants' motion to dismiss Plaintiffs' conversion claim, with leave to amend (if they are able to do so).

### **Conclusion**

The Court denies Defendants' anti-SLAPP motion. It grants Defendants' motion to dismiss, with leave to amend.